**Dated: January 9, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Jorge Alejandro Gamboa, | ) | Case No. 11-16261-JDL |
| | ) | Ch.13 |
| Debtor. | ) | |
| | ) | |
| James S. Matthews, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 17-1006-JDL |
| | ) | |
| Jorge Alejandro Gamboa, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER DENYING
### CROSS MOTIONS FOR SUMMARY JUDGMENT

#### I.  Introduction

Plaintiff/Creditor, James S. Matthews, Jr., Debtor's former attorney in state court litigation ("Matthews"), brings this adversary proceeding seeking to have the Court determine that the debt owed him for unpaid legal services is non-dischargeable based on Debtor's failure to schedule the debt in his Chapter 13 bankruptcy, resulting in Mathews'

not having notice or actual knowledge of the case in time to file a proof of claim.  Debtor,

Jorge Gamboa ("Gamboa"), responds that Matthews' claim is not excepted from discharge

because (1) at the time he filed bankruptcy he had not received a bill from Matthews,

believed any obligation had been paid and therefore did not know that he was indebted to

him, (2) that Matthews had actual knowledge of Gamboa's bankruptcy prior to completion

of the case and (3) that even if Matthews did not have actual knowledge of the bankruptcy

in time to timely file a proof of claim he could have filed a proof of claim when he learned

of the bankruptcy and prior to the completion of the plan or closure of the case.

Both Matthews and Gamboa have moved for summary judgment.  Before the Court

for consideration are *Defendant's Amended Motion for Summary Judgment and Brief on*

*Dischargeability of Unlisted Creditor Under Section 1328* ("Gamboa's Motion") [Doc. 57][1];

*Objection and Brief of Plaintiff James S. Matthews, Jr. in Opposition to Defendant's Motion*

*for Summary Judgment* (the "Matthews' Objection") [Doc 65-1]; *Motion and Brief of Plaintiff*

*James S. Matthews, Jr. for Summary Judgment as to 11 USC Sections 1328C* (sic) *and*

*727(a)(4)* ("Matthews' Motion") [Doc. 67-1]; *Corrected Objection to (Doc 67) Motion and*

*Brief of Plaintiff James S. Matthews, Jr. for Summary Judgment* ("Gamboa's Objection")

[Doc. 77]; and *Plaintiff's Reply to Defendant's Objection to Plaintiff's Motion for Summary*

*Judgment* ("Matthews' Reply") [Doc.83].  The following represents findings of fact and

conclusions of law required by Fed.R.Bankr.P. 7052[2] upon which the Court's decision is

---

[1] References to Docket Entries in this Order refer to the docket in Adversary Case No. 17-1006, unless otherwise noted.

[2] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure or to the Federal Rules of Civil Procedure made applicable to bankruptcy proceedings, unless otherwise indicated.

based.

## II. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Order of Reference contained in Local Rule LCvR 81.4 for the United States District Court for the Western District of Oklahoma. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I) and (J) (determinations as to the dischargeability of particular debts and objections to discharge) and the Court has authority to issue a final judgment.  Furthermore, pursuant to Rule 7008, Matthews in the Corrected Second Amended Complaint [Doc. 19] and Gamboa in the Answer [Doc. 20] have consented to the jurisdiction of this Court for the entry of final orders or judgments.

## III. Statement of the Case

1.  On November 17, 2011, Gamboa filed a Chapter 13 Bankruptcy.  Matthews was not listed as a creditor on the schedules or matrix filed. [BK. 11-16261, Docs. 1 & 4].

2. On the same date, Gamboa filed his Chapter 13 Plan proposing to pay 0% to unsecured creditors. [BK. 11-16261, Doc. 2].

3. Pursuant to the Notice of Chapter 13 Bankruptcy Case, April 11, 2012, was the deadline to file a Proof of Claim in this proceeding and March 12, 2012, was the deadline for objections to Debtor's discharge or to challenge dischargeability of debts. [BK. 11-16261, Doc. 8].

4.  On June 22, 2012, the Order Confirming Chapter 13 Plan was entered. The Order provided that unsecured creditors would receive no payments during the term of the plan. [BK. 11-16261, Doc. 24].

5. On November 14, 2016, Matthews filed a *Motion to Set Deadline for Filing 523 and 727 Complaint* [BK. 11-16261, Doc. 81][3] and a *Motion to Abandon and For Relief from Stay or Restraint of Confirmation Order* seeking the abandonment of the Debtor's interest in a motor cycle (sic).

6. On January 4, 2017, the Court entered Orders granting the motion for relief from stay and abandonment of property as well as giving Matthews an opportunity to file an adversary proceeding objecting to dischargeabilty of a debt. [BK. 11-16261, Docs. 97 & 98].

*7.* Matthews filed his Adversary proceeding on January 30, 2017. [Doc. 1]. On June 6, 2017, Matthews filed his *Corrected Second Amended Complaint.* [Doc. 18].

8. On May 10, 2017, the Chapter 13 Trustee filed his Final Report and Account indicating that, after modifications, the Plan had been completed and the case fully administered. There were no payments made to general unsecured creditors. [BK. 11-16261, Doc. 110].

### IV. Undisputed Facts

A. Gamboa admits that Matthews is not listed as a creditor on the schedules or matrix filed in the case. [Doc. 77, ¶ 1(A); Doc. 67-1, pg. 3,¶ 1; BK 11-16261, Doc. 1 & 4].

B. On August 14, 2013, Matthews initiated a collection action in the Oklahoma County District Court, Case No. CJ-2013-4493, against Gamboa for breach of an agreement and to sell a motorcycle Gamboa gave to Matthews in payment of services rendered. [Doc. 57,¶ 8; Doc. 65-1, pg. 12].

C. Gamboa failed to answer or otherwise plead in the state court proceeding, and on

---

[3] The pleading was originally filed as Doc. 79, however, due to a docketing error, the pleading was renumbered as Doc. 81.

January 17, 2014, a Journal Entry of Default Judgment was entered against him and in favor of Matthews in the amount of $25,175.00, attorney's fees in the amount of $1,500.00 and declaratory relief authorizing the sale of the motorcycle with the proceeds to be applied against the judgment. [Doc. 67-1, pg. 9,¶ 15 & Ex. 67-6; Doc. 77, pg. 6, ¶ 15].

D.  It is not disputed, at least prior to the June 20, 2012, confirmation of Gamboa's Chapter 13 Plan, that Matthews had not been given notice of the bankruptcy.  Matthews has testified that he did not receive "notice or any information from which he might have inferred that there might be a bankruptcy filed by Gamboa until October 30, 2015" when, apparently in response to Gamboa's having been served with a contempt citation for failure to appear at a hearing on assets, Matthews received a voice mail from Gamboa attorney's office advising him that Gamboa was in bankruptcy. [Matthews Affidavit, Doc. 65-2, ¶ ¶ 2, 19-21; Doc. 77, ¶ 1(B); Doc. 67-1, pg. 3, ¶ 1].

E.  The parties agree that at some point prior to the filing of the bankruptcy, Matthews did provide legal services to Gamboa; however the parties did not have a written contract for those services. [Doc. 57, ¶ 9; Doc. 65-1, pg. 12].

F.  The last bill Gamboa received from Matthews prior to the filing of the bankruptcy was dated March 26, 2010, and reflected a credit balance of $525.00. [Doc's. 57, ¶ 10; Doc. 65-1, pg. 12].

G.  Gamboa did not amend his schedules to add Matthews as a Judgment Creditor pursuant to the entry of the Default Judgment on January 17, 2014. [See, Docket sheet, BK 11-16261].

## V. Summary Judgment Standard

It is appropriate to grant a motion for summary judgment when the pleadings and

other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and that the moving party is entitled to judgment as a matter of law.  See Rule 56(c), made applicable to this adversary proceeding by Rule 7056.  "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).  Courts must review the evidentiary material submitted in support of the motion for summary judgment to ensure that the motion is supported by evidence.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied. Hearsay evidence cannot be considered on a motion for summary judgment.  *Wiley v. United States*, 20 F.3d  222, 226 (6th Cir. 1994).

When considering a motion for summary judgment, the court views the record in the light most favorable to the party opposing summary judgment.   See, *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991); *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).  Denial of summary judgment requires existence of genuine material issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986).  No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment.  See, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("Where the record taken

as a whole could not lead a rational trier of fact to find for the non-moving party, there is

'no genuine issue for trial'."). Put conversely, a genuine issue of material fact will exist

when a "nonmovant presents facts such that a reasonable jury could find in favor of the

nonmovant". *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

"[T]he nonmoving party may not rest on its pleadings but must set forth specific facts

showing that there is a genuine issue for trial as to those dispositive matters for which it

carries the burden of proof." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue

of material fact. *Anderson,* 477 U.S. at 256-57*; Margolis v. Ryan*, 140 F.3d 850, 852 (9th

Cir.1998).

In this case, both Matthews and Gamboa have moved for summary judgment.

Matthews argues his claim against Gamboa is barred from discharge based on § 727(a)(4)

and § 1328(c). Gamboa counters that he is entitled to a discharge of Matthews' claim

because the applicable statute, § 1328(a)(3)(A), provides an exception to discharge of a

claim, only *if known to the debtor.* (Emphasis in Gamboa's Motion). It is clear to the Court

upon searching the record that there does exists a significant disputed issue of material

fact concerning whether Gamboa had actual knowledge of the claim asserted by Matthews

at the time he filed for bankruptcy such that neither party is entitled to summary judgment.

### VI. Discussion

**A. Whether Matthews' Claim that Gamboa's Failure to List
Matthews as a Creditor Constitutes a "False Oath"
Rendering the Debt Non-Dischargeable Under § 727(a)(4).**

Matthews' Motion for Summary Judgment seeks the Court to find as a matter of law

that Gamboa's alleged knowing and fraudulent failure to schedule him as a creditor constitutes "making a false oath" in connection with the case barring Gamboa's discharge under § 727(a)(4).[4]  Matthews reliance on § 727 as the basis of an objection to discharge in a chapter 13 proceeding represents a profound misunderstanding of the Bankruptcy Code.  Section 727 applies to the denial of a debtor's discharge in Chapter 7 proceedings not Chapter 13 cases.  Section 103(b) clearly states "'[s]ubchapters I and II of Chapter 7 of this title apply only in a case under such chapter, therefore § 727's objection to discharge is not applicable to Chapter 13 cases."  *In re Ankoanda*, 495 B.R. 599, 606 (Bankr. N.D. Ga. 2013); *In re Skaltsas*, 2011 WL 2490580 (Bankr. D. Mass. 2011) ("§ 1328, not § 727, governs the debtors' right to a discharge"); *In re Duncan*, 2012 WL 5462917 (Bankr. D. Ariz. 2012) ("§ 727 (objections to discharge), as a general rule, usually is applicable only to Chapter 7 liquidation cases... [i]n fact, in chapter13 cases, there is no blanket § 727 challenge allowed at all.").  There is no legal basis under which  Matthews' claims under § 727 can be sustained, and therefore, Count III of Matthews' *Corrected Second Amended Complaint* [Doc. 19] is dismissed.

> **B. Whether Gamboa's Failure to List or Schedule Matthews as a Creditor and Gamboa's Claim that He Did Not Know Matthews Was a Creditor Entitles Either of Them to Summary Judgment.**

**1. Matthews' Motion**

Matthews also seeks to bar Gamboa's discharge under § 1328(c) for failing to schedule or list Matthews as a creditor.  Once again, Matthews incorrectly relies upon the wrong statute in support of his Motion.  Subsection 1328(c) only involves exceptions to

---

[4] Matthews' *Corrected Second Amended Complaint*, Count III. [Doc 19, pg.6].

discharge in a "hardship" discharge under subsection (b), i.e., a case in which the debtor

seeks a discharge without having completed payments under the plan.[5]   The Court will

therefore consider whether Matthews' Motion can be granted under the correct subsection,

§ 1328(a), which determines whether Matthews has a basis for objecting to Gamboa's

discharge.  That analysis involves the interplay of § 1328(a) and § 523(a).

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)

in 2005, a Chapter 13 debtor could discharge many of the debts which were non-

dischargeable in Chapter 7 or Chapter 11.  Specifically, before BAPCPA, § 1328(a)(2)

excepted from a Chapter 13 discharge only those debts specified in § 523(a)(5) (alimony

or support), (8) (student loans), or (9) (death or personal injury resulting from impaired

driving).   In 2005, acting to restrict the "super discharge" of Chapter 13, Congress

expanded the list of non-dischargeable debts in § 1328(a)(2) to include, *inter alia*, those

described in § 523(a)(2) (fraud), (a)(3) (failure to schedule or a list a creditor), (a)(4) (fraud

or defalcation in a fiduciary capacity), and (a)(6) (willful and malicious injury to personal

---

[5] Section 1328(c) provides as follows:

A discharge granted under **subsection (b)** of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt-
****
(2) of a kind specified in section 523(a) of this title.

Section 1328(b) provides, in pertinent part:

(b) Subject to subsection (d), at any time after the confirmation of the plan and after notice and a hearing, the court may grant a discharge to a **debtor that has not completed payments under the plan** only if - (emphasis added.).
****

property). (Emphasis added.).[6]

Section 1328 entitled "Discharge" now provides in, pertinent part:

> (a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan .... the Court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt–
>
> ****
>
> (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a).
>
> ****

In turn, § 523(a), entitled "Exceptions to discharge" provides, in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> ****
>
> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, *if known to the debtor*, of the creditor to whom such debt is owed, in time to permit –
>
>> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
>>
>> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual

---

[6] Matthews does not state in either his Amended Complaint or anywhere in his Motion for Summary Judgment what subsection or subsections of § 523 he is basing his non-dischargeability claims. Gamboa's primary defense to Matthews' Motion for Summary Judgment and his Cross-Motion for Summary Judgment assumes the subsection being applied is § 523(a)(3)(A). The Court treats Matthews' claim as being based upon § 523(a)(3)(A). Subsection (B) prevents the discharge of fraud, defalcation and malicious injury to personal property claims. Matthews has not alleged those claims or the elements necessary to prevail under them.

10

> knowledge of the case in time for such timely filing and request;

11 U.S.C. § 523(a)(3)(A) and (B). Putting the statute into straight-forward terms, this section excepts from a general discharge two types of debts: (1) Section 523(a)(3)(A) "non-fraud" debts which were not scheduled by the debtor in time to permit the creditor to file a proof of claim and (2) Section 523(a)(3)(B) "fraud" debts which were not scheduled by the debtor in time to permit the creditor to file a determination of non-dischargeability, unless in either case the creditor had notice or actual knowledge of the pendency of the case. See *In re Johnson,* 208 B.R. 746, 748-49 (Bankr. S.D. Ga.1996).

The language contained in § 523(a)(3)(A) is clear and not ambiguous: a debt is excepted from discharge if the creditor was neither listed nor scheduled and did not otherwise know of the bankruptcy case in time to file a timely proof of claim. As there is nothing for the Court to interpret, it must enforce the statute according to its terms. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.").

The undisputed facts show that Gamboa did not list or schedule a debt owed to Matthews prior to the claims bar date, and that Matthews did not have notice or actual knowledge of the case until approximately October 30, 2015, long after the April 11, 2012, time established to file a timely Proof of Claim or the March 12, 2012, deadline to object to Gamboa's discharge or challenge the dischargeability of his debt. [Case No. 11-16261, Doc. 8]. See *Dawson v. Unruh (In re Dawson)*, 209 B.R. 246, 250 (10th Cir. BAP 1997)

11

(concluding that under § 523(a)(3)(A), if there is a claims bar date and a creditor does not have actual notice and time to file a proof of claim prior to the expiration of the claims bar date the debt is not discharged, and equitable considerations do not apply because they cannot override the statute's plain language); *In re Schlueter*, 391 B.R. 112, 116 (10th Cir. BAP 2008) (quoting *In re Dawson*).   Thus, all the elements under § 523(a)(3)(A) for Matthews to establish, as a matter of law, an exception to Gamboa's discharge appear to have been met.   That, however, does not end the dispute.

**2. Gamboa's Motion**

Gamboa has asserted as a defense to him not giving Matthews proper notice of the bankruptcy that he (Gamboa) did not know that Matthews was asserting a claim against him at the time the bankruptcy was filed.   Gamboa asserts that his absence of such knowledge of Matthews' claim is not only a defense but also affords him a basis for summary judgment in his favor.

Section 523(a)(3) makes non-dischargeable debts which a debtor neither listed nor scheduled ***"if known to the debtor."*** (Emphasis added).   Simply put, § 523(a)(3)(A) does not apply when the debtor has no knowledge of the claim in time to include it in the schedules before the bar date has run. *In re Phillips*, 599 B.R. 133, 137 (Bankr. D. Kan. 2019) (holding that "where the Debtor legitimately had no knowledge of the ... claim when he filed his bankruptcy schedules and did not receive notice of the claim until after the claims bar date, exception to discharge of the § 523(a)(3)(A) does not apply."); *In re Leadbetter v. Snyder (In re Snyder)*, 544 B.R. 905, 909 (Bankr. M.D. Fla. 2016) ("Because the Debtors had no knowledge about a potential claim held by the [creditors] and therefore

12

could not have scheduled any such claim at the time this case was filed, § 523(a)(3)(A) does not render the [creditors'] claim nondischargeable."). The question then becomes whether the record before the Court establishes that there is no disputed issue of material fact as to whether Gamboa "had knowledge" of Matthews' claim.

As evidence that the Gamboa had knowledge of his claim, Matthews argues:

(1) At the beginning of his representation of Gamboa in 2009 he had told Gamboa that it "would not be surprising" that representation in this type of case could exceed $20,000.00, and the only bill which he had sent Gamboa prior to bankruptcy was dated March 26, 2010. Matthews further asked Gamboa throughout the representation how much he could pay up front or in addition but Gamboa always said that was not possible. [Matthews' Aff., Doc. 67-2, ¶¶ 5, 6 & 7];

(2) That by letter dated May 4, 2010 transmitted by email, Matthews reminded Gamboa that he had requested additional funds or collateral to continue on the representation and that he could not continue to represent him as funds were not forthcoming. It was going to be necessary to withdraw from representation, but that he would continue to represent Gamboa at the rate of $160.00 per hour until he was permitted to withdraw from his case. [Matthews' Aff., Doc. 67-2, ¶ 8 and Doc. 67-9, pg.7];

(3) Between the last work Matthews performed for Gamboa on March 11, 2011, and the filing of the state court Petition on August 14, 2013, Matthews called Gamboa every few months about reaching an agreement to compromise the approximately $20,000.00 amount which he owed. [Matthews' Aff., Doc. 67-2, ¶¶ 3, 4 & 10];

(4) In one of these conversations Gamboa told Matthews that he was seeking new employment and proposed giving Matthews possession of his motorcycle to secure payment of Matthews' bill. [Matthews' Aff., Doc. 67-2, ¶¶ 7 & 9];

(5) While Gamboa gave Matthews possession of the motorcycle and the title, he did not execute an assignment of the title and told Matthews that "he needed to be able to get it back when he could pay." [Matthews' Aff., Doc. 67-2, ¶ 7];

(6) In the summer of 2013 Matthews attempted to talk to Gamboa in a grocery store about his unpaid bill, but Gamboa walked away so that no conversation took place. [Matthews' Aff., Doc. 67-2, ¶ 11]; and

13

(7) When Matthews filed his state court action on August 14, 2013, the Petition personally served on Gamboa had attached to it Matthews' invoices of March 26, 2011 and July 9, 2013, indicating pre-petition services in the total amount of approximately $24,000.00. [Matthews' Aff., Doc. 67-2, ¶ 4 and Doc. 67-8].

In response to Matthews' evidence that he had knowledge of Matthews' claim,

Gamboa's evidence and testimony shows:

(1) Matthews' invoice dated July 31, 2013, attached to his state court Petition reflected that as of February 28, 2011, the "balance forward" showed Gamboa had a *credit* balance of $525.00.   This *credit* balance is also reflected on the billing statement dated March 26, 2010.[7]  [Doc. 42-1, pgs. 18 & 19] (emphasis added);

(2) That he didn't list Matthews in either Schedule D, the secured creditor list, or Schedule F, the unsecured creditor list, because he didn't think he owed Matthews anything at the time of the filing of the bankruptcy on November 17, 2011. [Gamboa Deposition, Doc. 57-4, pg. 2];

(3) Gamboa assumed that the payments which he had made plus the value of his motorcycle which he had given to Matthews exceeded what he owed him - "I assumed that I paid you more than enough" and did not owe anything else. Gamboa did not know he owed anything else because Mathews "did not send me a bill." [Gamboa Deposition, Doc 57-5, pg. 3];

(4) That he received a bill in the mail two or three years after he had filed bankruptcy and assumed it was part of the bankruptcy, since he understood that "all the creditors will be in the bankruptcy." [Gamboa Deposition, Doc. 57-4, pg. 2];

(5) While Gamboa in his "heart didn't feel like I needed to", he gave Matthews his motorcycle because Matthews had told him that he needed more money and would "quit being my attorney if I didn't bring you something of value." [Gamboa Deposition, Doc. 73-3, pg.2]; and

(6) While Gamboa did not endorse the title over to Matthews, he believed that he no longer owned the motorcycle and therefore he did not list it on Schedule B. [Gamboa Deposition, Doc.73-3, pg.1].

---

[7] The March 26, 2010 statement is the only statement Mathews sent to Gamboa prior to the filing of the bankruptcy on Nov. 17, 2011. [Matthews' Aff., Doc. 67-2, ¶ 5].

14

"On a motion for summary judgment we cannot evaluate credibility nor can we weigh evidence." *Cone v. Longmont United Hospital Association*, 14 F.3d 526, 533 (10th Cir. 1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" and "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). *First Security Bank of New Mexico, N.A. v. Pan American Bank*, 215 F.3d 1147, 1154 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*).

Gamboa claims that he did not know of Matthews' claim prior to the deadline for filing a proof of claim or for filing a non-dischargeability adversary, and the record cited above does contain some evidence that puts that issue in controversy. Where there is competing evidence as to a party's knowledge affecting a debtor's crucial bankruptcy protection of a discharge, the Court is hesitant to grant summary judgment. In *Schlueter v. State Farm Mutual Insurance Co. (In re Schlueter)* 391 B.R. 112, 116 (10th Cir. BAP 2008), the BAP reversed the bankruptcy court which had granted summary judgment to a creditor denying dischargeability of its debt which had not been scheduled and where the creditor had no notice of the bankruptcy, but the debtor claimed she was not aware of the creditor's claim:

> Alternatively, the Debtor argues that the issue of her knowledge of State Farm's claim was a disputed issue of material fact that should have precluded summary judgment. The substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Pursuant to § 523(a)(3), a debtor has a responsibility to list claims only if **known** (emphasis added). Therefore, the Debtor's knowledge is a material fact. Here,

15

> Debtor argues that she did not know of State Farm's claim until
> State Farm filed its state court case.
>
> ****
>
>  *** In light of evidence in the record that the Debtor disputed
> her knowledge of State Farm's claim, we conclude that the
> bankruptcy court erred when it granted State Farm's Cross-
> Motion for summary judgment.

*Schlueter,* 391 B.R. at 116 -17.

Because the record before the Court indicates that the issue of Gamboa's

knowledge of Matthews' claim at the time of the filing of the bankruptcy is disputed, the

Court cannot say as a matter of law that either party is entitled to summary judgment.

### C.  Gamboa's Assertion that Even If Matthews Did Not have Actual Notice of the Bankruptcy by the Claims Bar Date He Still Could Have Filed a Claim Out of Time Under Section 726(a)(2)(C).

Gamboa asserts one additional ground in support of his Motion for Summary

Judgment to which the Court feels compelled to comment on since it too addresses a

chapter 7 provision not applicable in this chapter 13 proceeding.[8]  Gamboa argues that

even if Matthews didn't have actual notice of the bankruptcy until late 2015 as he claims,

he nevertheless could have filed a claim out of time long prior to the completion of the Plan

in 2017, relying on § 726(a)(2)(C) which provides, in pertinent part:

> (a)  Except as provided in section 510 of this title, property of the estate shall
> be distributed –
>
> ****
>
> (2)  second, in payment of any allowed unsecured claim, other than
> a claim of a kind specified in paragraph (1), (3), or (4) of this
> subsection, proof of  which is

---

[8] Matthews doesn't address or challenge Gamboa's argument the § 726(a)(2)(C) is applicable in this case.

****

(C) tardily filed under section 501(a) of this title, if –

> (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of claim under section 501(a) of this title; and

> (ii) proof of such claim is filed in time to permit payment of such claim;

Gamboa contends that § 726(a)(2)(C) contemplates the allowance of late-filed claims of a creditor who lacks notice or actual knowledge of the case, and that Matthews failed to avail himself of the opportunity to file a tardy claim, thus Gamboa is entitled to a discharge of the debt. Gamboa's "argument has been universally rejected by other courts." *In re Mackinder-Manous*, 2015 WL 790883 (Bankr. E.D. Ky. 2015); *In re Griggs*, 306 B.R. 660, 663 (Bankr. W.D. Mo. 2004); *In re Wright*, 300 B.R. 453, 462-66 (Bankr. N.D. Ill. 2003); *In re Brogden*, 274 B.R. 287, 290 (Bankr. M.D. Tenn. 2001). Section 103 provides that "[s]ubchapters I and II of Chapter 7 of [the Bankruptcy Code] *apply only* in a case under such chapter." 11 U.S.C. § 103(b) (emphasis added). Section 726 is located in subchapter II of chapter 7. For the same reasons the Court rejects the use of § 727 to bar a discharge in chapter 13 cases, the Court finds that § 726(a)(2)(C) does not apply and affords Gamboa no basis for relief.

Further, "courts have almost uniformly ruled that proofs of claim that are untimely filed in a Chapter 13 case may not be deemed timely filed, and the claimants thereunder should not take from, or be permitted to recover from, the debtor's estate under the Chapter 13 plan." *In re Daniels*, 466 B.R. 214, 217 (Bankr. S.D. N.Y. 2011) (a bankruptcy court does not have the discretion to allow late filed claims in a Chapter 13 case). See

17

e.g., *Jones v. Arross,* 9 F.3d 79 (10th Cir. 1993) (holding that even the "excusable neglect" standard to allow late filing of proofs of claim does not arise in Chapter 12 cases); *In re Jones,* 154 B.R. 816, 818 (Bankr. M.D. Ga. 1993). Even the seminal United States Supreme Court case on "excusable neglect", *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S.Ct. 1489 (1993), made clear that Rule 3002(c) was excluded from the operation of the excusable neglect standard. *Id.,* at 389, n. 4.

While the law is clear that there is no basis for permitting the filing of an unsecured proof of claim out of time in a Chapter 13, a debtor may not take advantage of such shelter at the expense of the creditor's due process rights. Proceedings within the ambit of the Bankruptcy Code are no less susceptible to the requirements of due process arising out of the Fifth Amendment to the Constitution than in any other realm. *In re XO Communications, Inc.,* 301 B.R. 782, 792 (Bankr. S.D. N.Y. 2003) (citing *In re Drexel Burnham Lambert Group, Inc*., 151 B.R. 674, 679 (Bankr. S.D. N.Y. 1993). One such fundamental due process right is a creditor's right to receive notice of the bar date for filing a proof of claim. *In re Mariner Post-Acute Network, Inc.,* 303 B.R. 42, 46 (Bankr. D. Del. 2003). While a Chapter 13 does not allow for the late filing of a proof of claim, "the Bankruptcy Code, however, specifically provides a remedy" for creditors who did not receive proper notice to file a timely claim. *Jones v. Arross*, 9 F.3d at 81-82.

Section 523(a)(3)(B) addresses important due process concerns by providing for a non-dischargeability action for defrauded creditors who were neither listed nor scheduled and had no notice of or actual knowledge of the case in order to permit the timely filing of a proof of claim. *Id; In re Jenkins*, 434 B.R. 604, 607-08 (Bankr. D. Colo. 2010); *In re*

*Schick*, 290 B.R. 792, 800 (10ᵗʰ Cir. BAP 2003) ("When a debtor does not afford a creditor due process, either by failing to timely schedule a creditor or by scheduling it incorrectly, the creditor's right to object to the dischargeability of a debt cannot be time-barred under Fed.R.Bankr.P. 4007(c)."  Actions brought by creditors under § 523(a)(3)(B) are governed by Rule 4007(b) which provides that a complaint under that section may be filed *at any time*.  Thus, there is no statutory time limit for actions filed under § 523(a)(3)(B).  If Matthews' believed he was denied due process, this non-dischargeability action is the proper remedy.  Gamboa is incorrect in arguing that Matthews' proper remedy was the filing of a late claim as soon as he found out about the bankruptcy, and that Matthews failed to avail himself of that remedy.

### VII. Conclusion

For the reasons set forth above, the Court finds there exists a disputed issue of material fact as to whether Gamboa had knowledge that Matthews had a claim prior to the filing of the bankruptcy or the deadline for filing of a proof of claim.  The Court also finds that there is no legal basis for Matthews relying upon § 727(a)(2)(C) to deny Gamboa a discharge or for Gamboa to rely on § 726(a)(2)(C) as a basis for allowing a discharge of an unscheduled debt.  Accordingly,

**IT IS THEREFORE ORDERED** that *Defendant's Amended Motion for Summary Judgment and Brief on Dischargeability of Unlisted Creditor Under Section 1328* [Doc. 57] and the *Motion and Brief of Plaintiff James S. Matthews Jr for Summary Judgment as to 11 USC Sections 1328C* (sic) *and 727(a)(4)* [Doc. 67-1] are both hereby **Denied**.

**IT IS FURTHER ORDERED** that Count III of Matthews' *Corrected Second Amended Complaint* [Doc. 19] is **Dismissed**.

19

**IT IS FINALLY ORDERED** that the Court will conduct a scheduling conference to set a new trial date in this adversary on the 30th day of January, 2020 at 11:00 A.M., 2nd Floor Conference Room, 215 Dean A McGee, Oklahoma City, OK 73102.

**# # #**