**Dated: August 17, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Jorge Alejandro Gamboa, | ) | Case No. 11-16261-JDL |
| | ) | Ch.13 |
| Debtor. | ) | |
| | ) | |
| James S. Matthews, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 17-1006-JDL |
| | ) | |
| Jorge Alejandro Gamboa, | ) | |
| | ) | |
| Defendant | ) | |

**OPINION AND ORDER DENYING MOTION TO DISQUALIFY**

**I. Introduction.**

Plaintiff James Matthews ("Matthews"), a lawyer representing himself, having lost this adversary proceeding objecting to the Debtor's dischargeability of a debt owed him for attorney's fees, seeks disqualification of the Court based on allegations of unethical, unprofessional behavior and errors in applying the law. Before the Court are Matthew's

*Motion to Disqualify* (the "Motion") [Adv. Doc. 149] and the Debtor's *Objection to Motion to Disqualify* (the "Objection") [Adv. Doc. 154]. The following constitutes the Court's Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.[1]

## II. Background

1. On November 17, 2011, Debtor Jorge Gamboa ("Debtor") filed a Chapter 13 bankruptcy. Matthews was not listed as a creditor on the schedules or the matrix. On June 22, 2012, the Court, the Honorable Niles L. Jackson, entered the *Order Confirming Chapter 13 Plan* which provided that unsecured creditors would receive no payments under the Plan. [BK. 11-16261, Doc. 24].

2. Not knowing of the bankruptcy, in 2013 Matthews filed a collection action in the District Court of Oklahoma County to recover attorneys fees owed him for representation of the Debtor prior to the bankruptcy. The Debtor was served with process but failed to file an answer, and on January 17, 2014, a Journal Entry of Default Judgment was entered against him and in favor of Matthews in the amount of $25,175, plus attorneys fees and costs.

3. Matthews did not know of the bankruptcy until October 30, 2015, when apparently in response to the Debtor having been served with a contempt citation for failure to appear at a hearing on assets, Matthews received a voice mail from Debtor's counsel advising him that the Debtor was in bankruptcy.

4. On November 14, 2016, Matthews filed a motion with this Court seeking to set new deadlines for him to file a § 523 and § 727 complaint objecting to the Debtor's

---

[1] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

discharge of the judgment for attorneys fees owed Matthews. [BK. 11-16261, Doc. 81]. Matthews was granted relief by this court, and on January 30, 2017, he filed this adversary proceeding seeking the determination of the nondischargeability of the debt owed him under 11 U.S.C. § 523 and the Debtor's discharge under 11 U.S.C. § 727.[2]

5. After numerous motions and cross-motions disposing of legal theories and claims made by both parties, on January 9, 2020 the court entered its *Memorandum Opinion and Order Denying Cross-Motions for Summary Judgment* which paired the issue for trial down to one: Did the Debtor have knowledge that Matthews had a claim prior to the filing of the bankruptcy or the deadline for filing a proof of claim so as to preclude the dischargeability of the debt owed Matthews under § 523(a)(3). [Adv. Doc. 87].[3]

---

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[3] Matthews' claim objecting to discharge based on § 727 was dismissed by the Court in the *Memorandum Opinion and Order Denying Cross-Motions for Summary Judgment* [Adv. Doc. 87] wherein the Court stated:

> "Section 727 applies to the denial of a debtor's discharge in Chapter 7 proceedings not Chapter 13 cases. Section 103(b) clearly states "'[s]ubchapters I and II of Chapter 7 of this title apply only in a case under such chapter," therefore § 727's objection to discharge is not applicable to Chapter 13 cases." *In re Ankoanda*, 495 B.R. 599, 606 (Bankr. N.D. Ga. 2013); *In re Skaltsas*, 2011 WL 2490580 (Bankr. D. Mass. 2011) ("§ 1328, not § 727, governs the debtors' right to a discharge"); *In re Duncan*, 2012 WL 5462917 (Bankr. D. Ariz. 2012) ("§ 727 (objections to discharge), as a general rule, usually is applicable only to Chapter 7 liquidation cases... In fact, in ch.13 cases, there is no blanket § 727 challenge allowed at all."). There is no legal basis under which Matthews' claims under § 727 can be sustained and therefore, Count III of Matthews' *Corrected Second Amended Complaint* is dismissed."

6. Trial on Matthew's claim of nondischargeability of the debt owed him was conducted by the Court on June 3, 2020. At the conclusion of trial, the Court made findings of fact and conclusions of law that the Debtor had established that at the time of the filing of the bankruptcy, and for some time thereafter, he believed that any debt to Matthews had been paid. The Court found that while the Debtor had neither listed or scheduled Matthews' claim, he did not know that such claim was due and owing. Accordingly, pursuant to § 523(a)(3) the Court held that the debt to Matthews was not excepted from discharge.

### III. The Motion to Disqualify

At trial Matthews sought to introduce evidence that the Debtor had failed to account to the Trustee and the Court for all his income, principally post-petition income. Matthews asserts that the Court should never have confirmed the Chapter 13 Plan, and that the Court's conduct and rulings at trial was an effort to hide the Court's improper confirmation of the Plan. In the language of his Motion, Matthews asserts that the Court "improperly altered the proceeding in a manner designed to minimize the Court's failure to follow basic, apparent and routinely required rules of income documentation to determine whether a proposed Chapter 13 plan should be confirmed...." Associated with that assertion, Matthews also makes the following allegations:

1. "Judge Lloyd (*sic* and misspelled throughout the Motion) could reasonably be embarrassed that she signed a confirmation order, in light of the glaring omissions." (Adv. Doc. 149, ¶ 12).

2. "The Court did nothing to evaluate whether the rule (requiring payment of disposable income) had been followed" and "no bankruptcy judge would want that to happen to appear that he or she had allowed it to happen." (Adv. Doc. 149, ¶ 7).

4

      3. At trial, in response to Matthews assertion that the Court had not taken into consideration the Debtor's true income in confirming the Plan, the Court noted that she "assumed that the Chapter 13 Trustee did his job appropriately." Matthews asserts "THE ONLY POSSIBLE IMPORT OF SUCH A COMMENT WAS THAT Judge Lloyd was not to blame if she delivered a discharge to a person who obviously evaded his duty" and "strongly suggested that the surprising activity by Judge Lloyd was the product of an effort to avoid blame in delivering confirmation without the required income documentation.... (Adv. Doc. 149, ¶ 23).

      4. That from the Court's determination that the only issue in the case was Debtor's knowledge of Matthews claim pursuant to § 523(a)(3) the only "appropriate conclusion was that the Court's statement was pretense." (Adv. Doc. 149, ¶ 18).

One would think that anybody, no less an attorney with 39 years experience, before making such a serious, scurrilous, slanderous attack upon a federal judge's ethics and motives would know the facts of the case. One of the most glaring misstatement of facts by Matthews is that the *Order Confirming Debtor's Chapter 13 Plan* was entered on June 22, 2012 by the Honorable Niles L. Jackson, not by Judge Loyd [Bk. 11-16261, Doc. 24]. Another pertinent fact is that this Judge did not take the bench until December 2014 and wasn't assigned this case until February 18, 2015. Matthews' allegations venture into Rule 9011(b)(3) territory which imposes upon counsel the duty to ensure that a motion filed with the court meet the requirement that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ...."

Matthews makes the above stated claim that the Court's statement at trial that the only factual issue to be tried was the Debtor's knowledge of Matthews' claim was "pretense." In support of this argument, Matthews now makes two unbelievable admissions in his Motion that (1) "there was no dispute by either party that the debt was not due and owing" at the time of the filing of bankruptcy and (2) "whether Matthews had

5

a claim and the amount of that claim was not before the Court." [Adv. Doc. 149, ¶¶ 18 & 20].

From the very beginning of this case, the issue presented by Matthews in his *Second Amended Complaint* [Adv. Doc. 18] was whether the debt owed to him was dischargeable pursuant to § 1328. Section 1328(a) excepts from discharge any debt of the kind specified in (among others) section 523(a). 11 U.S.C. § 1328(a)(2). Clearly this was a § 523(a)(3) case. Section 523(a)(3) makes nondischargeable a creditor's claim which is "neither listed nor scheduled...*if known to the debtor*." The Court had made clear in its 20 page *Memorandum Opinion and Order Denying Cross Motions for Summary Judgment* that the only remaining material issue of fact remaining in dispute was "whether Gamboa had knowledge that Matthews had a claim prior to the filing of the bankruptcy or the deadline for filing of a proof of claim," which was a factual issue to be determined at a trial on the merits.[4] At a Scheduling Conference held on February 6, 2020, the Court made clear on at least two occasions that the only issue remaining in the case, and the only one which would be heard at trial, was whether the Debtor knew that Matthews had a claim and, if so, when he knew it.[5]

---

[4] Matthews makes the curious statement in his Motion that "it is impossible to reconcile the [*Memorandum Opinion and Order Denying Cross Motions for Summary Judgment*], and the issue as the Court defined it shortly before trial." A review of the Opinion and the Issue presented in the Modified Final Pre-Trial Order was virtually verbatim, so it is difficult to understand how the two could not be reconciled.

[5] In his Motion, Matthews states that "[w]hen the issue (of the Debtor's income) was raised in the last status conference, Judge Lloyd (sic) appeared to recognize the relevance of Gamboa's income." [Adv. Doc. 149, ¶ 9]. The Court has listened to the audio recording of the status conference. Matthews claim is in error. At no time did the Court recognize the relevance of Gamboa's income.

The Final Pretrial Order stated the legal issue as "whether the Debtor had knowledge that Matthews had a claim due and owing prior to the filing of the bankruptcy or the deadline for the filing of a proof of claim pursuant to 11 U.S.C. § 523(a)(3)." So as to leave no doubt as to the issue to be tried, the Court added the following language at the top of the Final Pretrial Order: "The Court has modified this Untimely Final Pre-Trial Order to succinctly identify the issue to be tried per the Court's Order entered January 9, 2020 [Doc. 87]." [Adv. Doc. 111]. Debtor's counsel in his Objection notes that Matthews was well aware as long ago as the ruling on the Motions for Summary Judgment that the Court regarded Debtor's knowledge of Matthews claim as the only issue in the case, yet Matthews did not seek the Court to reconsider its position prior to trial. [Adv. Doc. 154, ¶ 6]. The suggestion that this issue was merely "pretense" is without factual, or even logical, support.

Following trial, the Debtor as prevailing party filed a motion to recover attorney fees and costs. Matthews filed an objection to same.[6] Neither the Debtor's motion nor Matthews' objection cited a single case in support of their respective positions as to whether the prevailing party in a nondischargeability case brought pursuant to § 523(a)(3) was entitled to recover attorney fees. As a result, the Court entered an *Order* asking the parties to submit briefs containing legal authority for their respective positions. [Adv. Doc. 142]. Matthews filed his Response asserting that the Court's request for additional briefs on the attorney fee issue "violates Due Process and applicable Rule (sic)" and "the procedure created by the Court is part of the Cause for the pending request for

---

[6] The objection was filed after the Court granted Matthews an extension of time to file same. [Adv. Doc. 132].

7

disqualification." [Adv. Doc. 152]. In the present Motion, Matthews contends that the Court had no authority for requesting additional briefs on the attorneys fee issue. Matthews states that the Court's request for both parties to submit authorities on the issue of attorneys fees is a "diversion from routinely established procedure (sic) can be fairly interpreted as an improper effort by Judge Lloyd (sic) to punish Matthews for appealing its judgment and to critisize (sic) the Court." [Adv. Doc. 149, ¶ 28].

It is indeed a novel argument for counsel to tell the Court that it has no right or authority to request the parties to submit briefs on the issue at hand, particularly so when there is no question that the parties had failed to submit any case authority for their respective positions. To assert that requesting briefs can be "fairly interpreted" as a retaliatory act by the Court for a litigant appealing an order is, putting it mildly, untenable.

### IV. The Law Of Disqualification or Recusal

Matthews filed his Motion under 28 U.S.C. § 455, and he asserts that "in addition, relief will be sought in accordance with 28 U.S.C. § 144."[7] The disqualification of a bankruptcy judge is governed by Rule 5004, which states: "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding over the case." Matthews' Motion is apparently based upon 28

---

[7] 28 U.S.C. § 144 is not applicable to bankruptcy proceedings. As stated above, Rule 5004 makes only 28 U.S.C. § 455 applicable in bankruptcy proceedings. The Court notes, however, that Matthews failed to follow the procedure required by § 144. First, there was no affidavit filed by Matthews, which is required under the statute. Second, the statute requires a certificate from counsel of record that the affidavit is filed in good faith which Matthews failed to file as well.

U.S.C. § 455(a)[8] which provides that "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The standard for determining whether a judge's impartiality might reasonably be questioned for purposes of 28 U.S.C. § 455 is an objective standard. *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998). "This objective standard asks whether the judge's impartiality might be questioned by a reasonable, well-informed observer who assesses 'all the facts and circumstances.'" *Id*. The objective standard under 28 U.S.C. § 455 abolishes the former rule that the "courts should resolve close questions of disqualification in favor of a judges' so-called 'duty to sit,' but it does not require a judge to recuse himself because of 'unsupported, irrational or highly tenuous speculation.'" *Id.* at 286-87. For the court to disqualify itself in such circumstances "would be to set 'the price of maintaining the purity of appearance' too high– it would allow litigants 'to exercise a negative veto over the assignment of judges'.... a result which Congress never intended the disqualification statute to yield." *Id.*

Section 455 is most commonly applied when a judge learns something outside of the proceedings before her which "results in an opinion on the merits on some basis other than what the judge learned from her participation in the case." *Armstrong v. Bailey*, 101 Fed.Appx. 780 (10th Cir. 2004); *Liteky v. United States*, 510 U.S. 540, 551, 114 S.Ct. 1147

---

[8] Matthews did not specify which subsection of § 455 he was relying upon. Presumably he is relying on § 455(a) which is a catchall disqualification provision. Subsection (b)(1) is more narrow in that it requires a judge to disqualify himself only if "he has a personal bias or prejudice concerning the party, or personal knowledge of disputed evidentiary facts concerning the proceeding". Section 455(a), on the other hand, is a "catchall recusal provision, covering both 'interest or relationship' and 'bias or prejudice' grounds." *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147 (1994).


(1994) (noting that "the extrajudicial source factor is the only common basis upon which to establish disqualifying bias"). Neither a judge's knowledge about a party from the judge's participation in a separate case or prior adverse ruling is a ground for recusal under § 455. *Willner v. University of Kansas*, 848 F.2d 1023, 1028 (10th Cir. 1988); *United States v. Cooley*, 1 F.3d 985, 993-4 (10th Cir. 1993). The mere fact that a judge has expressed an opinion on a point of law is not a basis for recusal. *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976), nor is the fact that the prior rulings in the proceeding have been adverse to the party seeking recusal. *Glass v. Pfeffer*, 849 F.2d 1261, 1268 (10th Cir. 1988).

In *In re Bennett*, 283 B.R. 308, 322 (10th Cir. BAP 2002), the Bankruptcy Appellate Panel summarized the basis for recusal under § 455 as follows:

> "In *Liteky*, the court stated that § 455(a) is subject to an 'extrajudicial source factor,' which at its base asserts that alleged bias or prejudice 'must stem from an extrajudicial source [or source outside the judicial proceeding at hand] and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' (Citation omitted). Under this factor, 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.' Also–
>
> [O]pinions formed by [a] judge on the basis of facts introduced or events occurring in the course of the [case], or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.... Not establishing bias or partiality,

10

> however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts in courtroom administration ... remain immune."

Similarly, the standard of recusal under § 455(a) was stated by the Tenth Circuit in *In re American Ready Mix, Inc.,* 14 F.3d 1497, 1501 (10th Cir. 1994) (quoting *Hinman v. Rogers*, 831 F.2d 937, 938-39 (10th Cir.1987):

> "Under § 455, a judge should recuse if 'a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.' However, 'factual allegations do not have to be taken as true,' and '[t]here is as much obligation for a judge not to recuse when there is no occasion ... to do so as there is ... to [recuse] when there is.' A judge should not recuse ... on unsupported, irrational, or highly tenuous speculation."

Matthews claims that "anger (from the Court) came in the form of sounds and movement behind the bench, to such an extent that in spite of the distance and height between the parties, it appeared Judge Lloyd (sic) left her seat aggressively and was with great difficulty kept from physical action." [Adv. Doc. 149, ¶ 21]. That didn't happen. The Court has reviewed the audio and video of the trial, and there is no basis for Matthews' hyperbolic allegation. In his Objection to the Motion, counsel for the Debtor has stated that "[t]he allegations that Judge Lloyd (sic) directed insults to Matthews and left her seat are simply untrue. Judge Lloyd (sic) conducted the trial professionally and without any unwarranted emotion." [Adv. Doc. 154, ¶ 12].

That Matthews believes he was treated unfairly does not give rise to the Court's disqualification. Because a judge must "form judgments of the actors in those court-house dramas called trials" and "render decisions" based on them, rulings resting on record

11

evidence "almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 551-55. "Only in the rarest circumstances," the Supreme Court has warned, will rulings "evidence the degree of favoritism or antagonism required" to want recusal. *Id.* at 555.

As one well-known federal judge put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *Liteky*, 510 U.S.at 551 (quoting Judge Jerome Frank in *In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (2nd Cir. 1943).

Matthews focuses on the Court's comments concerning the only bill which he had sent to the Debtor prior to the bankruptcy which reflected a $525 credit balance. The Court learned for the first time at trial that this billing statement was actually Matthews' bill to a different client, even though it bore the name and address of the debtor on the mailing heading. This bill had been evidence throughout the pleading and summary judgment stages, and according to Matthews only discovered a few days before trial that this bill was in error. Neither Matthews, the Debtor, Debtor's counsel nor the Court was aware of Matthews' mistake. The credit balance had been considered evidence by all parties as having relevance as to whether or not the Debtor knew he owed Matthews any money prior to the bankruptcy. The Court indicated that she found it "incredulous" that the mistake had not been brought to the attention of the Debtor's counsel or the Court prior to trial. However, the fact that Matthews had mistakenly sent another client's bill to the Debtor did not change the evidentiary value of the bill and was not outcome determinative. It didn't change the fact that whoever's bill it was reflected a credit balance and was one factor

leading the Debtor to believe that he did not owe Matthews when he filed bankruptcy and thus did not list Matthews as a creditor. The Court did not give more or less evidentiary value to the bill because of Matthew's mistake.

## V. Conclusion

For the reasons stated in this Opinion and Order, this Court is satisfied that a reasonable, well-informed outside observer, aware of all the facts and circumstances presented here, would not question this Court's impartiality. Accordingly,

IT IS ORDERED that Matthew's *Motion to Disqualify* [Adv. Doc. 149] is hereby **DENIED.**

# # #